THE PEOPLE OF THE STATE OF NEW YORK ex rel. THOMAS F. McGRATH, Respondent, v. THE BOARD OF SUPERVISORS OF WESTCHESTER COUNTY, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. JEREMIAH CLANCY, Respondent, v. THE SAME, Appellant.

THE PEOPLE OF THE STATE OF NEW YORK ex rel. WILLIAM H. McPHERSON, Respondent, v. THE SAME, Appellant.

*Charter of the city of Yonkers — election of supervisors — constitutionality of the amendment of 1892.*

The provision of section 4 of chapter 54 of the Laws of 1892, amending the charter of the city of Yonkers, which had theretofore given the city but one supervisor, by enacting that the elective officers of the city should include a supervisor for each ward to be elected by the electors of their respective wards, does not violate the clause of the Constitution of the State of New York (art. 3, § 18) which prohibits the Legislature from passing a private or local bill " providing for the election of the members of the boards of supervisors."

The constitutional provision in question was designed to limit the legislative power in the manner of electing supervisors by the vote of the electors, and was not intended to deprive the Legislature of the power to equalize representation by giving a supervisor to each ward of a city.

APPEALS by the Board of Supervisors of Westchester county from orders of the Supreme Court, made at the Westchester Special Term and entered in the office of the clerk of Westchester county on the 26th day of November, 1892, directing writs of peremptory mandamus to issue requiring the board of supervisors to recognize each of the respective relators as a supervisor of Westchester county.

The relators seek recognition as members of the board of super-

visors of the county of Westchester; the relator McGrath as supervisor of the third ward of the city of Yonkers; the relator Clancy, as supervisor of the fourth ward of the city of Yonkers, and the relator McPherson, as supervisor of the fifth ward of the city of Yonkers.

The board of supervisors refused to recognize them and by regular proceedings they obtained the order from which the appeal is taken. The conceded facts in the case are, that the city of Yonkers was incorporated originally in 1872, and its charter was re-enacted in 1881 by chapter 184 of the laws of that year. The original and the new charter of 1881 gave the city but one supervisor. In 1892 the charter was amended by chapter 54, and the law applicable to this proceeding is section 4 of chapter 54 of the Laws of 1892, and reads as follows:

"The elective officers of the city shall be a Mayor, a City Judge and four Justices of the Peace who shall be elected by the electors of the city, and a Supervisor for each ward, and two Aldermen for each ward, who shall be residents of and elected by the electors of their respective wards."

Under this law the political parties in the city of Yonkers nominated candidates for supervisor for the various wards in the city, and on March twenty-ninth an election was held and the three relators were elected supervisors of their respective wards, and the result of the election was declared by the common council of the city and certificates of election awarded to them. After taking the oath of office, they presented themselves to the board of supervisors and were refused admission, the supervisors deciding that the law under which they were incorporated was unconstitutional, and recognizing as supervisor Jacob Read, who had been elected at the town election in 1891, as the supervisor for the entire city. These proceedings were then instituted and the orders directing a peremptory writ of mandamus issued, from which orders these appeals are taken.

*W. H. Robertson* and *Wm. Romer*, for the appellant.

*Joseph F. Daly*, for the respondents.

BARNARD, P. J.:

By chapter 866, Laws of 1872, the Legislature incorporated the city of Yonkers. By chapter 184, Laws of 1881, the charter was

amended and passed as an entirety.    Under each of these laws the city had but one supervisor.    By chapter 54, Laws of 1892, the Legislature enacted that each ward of the city should have a supervisor.    The relator was elected under this law and the supervisors refused to receive him.    The Constitution provides that the Legislature shall have no power to pass a private or local bill "providing for the election of the members of the board of supervisors."    A supervisor is not one of the officers to be elected by the people as provided in the Constitution.    Such officer could be elected by the towns and villages or of some division thereof or appointed as the Legislature should direct.    The general rule is that supervisors are elected by the people, and while additional supervisors have been provided for in cities, it is equally a general rule that they are elected by the wards or districts created therein by the Legislature. The constitutional provision inserted in 1874 was designed to limit the legislative power in the manner of electing supervisors by the vote of the electors and not intended to deprive the Legislature of the power to equalize representation by giving a supervisor to a ward of a city.    The legislators have acted on this view in numerous cases.    The charters of cities have been frequently amended by creating or adding wards to cities and providing for the election of supervisors therein.

The charter providing for one supervisor could be amended after the constitutional article was inserted without violating the same. (*Reed* v. *Schmit,* 39 Hun, 223.)

The judgment should be affirmed, with costs.

PRATT, J., concurred; DYKMAN, J., not sitting.

Judgment affirmed, with costs.